UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSHUA NEWTON, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>META PLATFORMS INC.,<br><br>    Defendant. | Case No.  23-cv-00116-JD<br><br>**ORDER RE DISMISSAL** |

Plaintiffs Joshua and Alexander Newton allege that defendant Meta Platforms, Inc., banned them from advertising their feature film on the Facebook platform.[1] Dkt. No. 1. The complaint makes claims for breach of contract, fraud, and intentional infliction of emotional distress (IIED), and seeks damages for lost ticket sales and emotional suffering. *Id*. Facebook asks to dismiss the complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6), Dkt. No. 17, which the Newtons oppose, Dkt. No. 26. The complaint is dismissed with leave to amend.

**BACKGROUND**

As alleged in the complaint, Facebook updated its Community Standards in October 2020 to manage Holocaust disinformation on the platform. Dkt. No. 1 ¶¶ 36–38. In September 2022, the Newtons released *Beautiful Blue Eyes*, a film about a man who confronts a Nazi responsible for the murder of his family members. *Id*. ¶ 25. The title refers to the eye color of a child killed by Nazis. *Id*. ¶ 24. The Newtons allege that Facebook misclassified *Beautiful Blue Eyes* as hate speech "solely because of its title" and prevented them from advertising on Facebook in the lead-

---

[1] The parties bounce around a bit in their use of "Meta" and "Facebook." Because this case concerns actions taken by the Facebook specifically, the Court uses Facebook for clarity.

1   up to the film's theatrical release. *Id.* ¶ 48. The ad ban is said to result from Facebook's "racist
2   and anti-Semitic practices." *Id.* ¶ 96. In the Newtons' view, the film under-performed at the box
3   office, and the ban caused them to lose sales and inflicted "emotional distress." *Id.* ¶¶ 76, 80, 99.

## LEGAL STANDARDS

The standards that govern a Rule 12(b)(6) motion to dismiss are well established and addressed in prior orders, which are incorporated here. *See Williams v. J.P. Morgan Chase Bank, N.A.*, No. 3:22-CV-07149-JD, 2023 WL 3590682, at *1 (N.D. Cal. May 22, 2023); *BPi Bright Power, Inc. v. Umpqua Holding Corp.*, No. 22-cv-03285-JD, 2023 WL 3029237, at *1 (N.D. Cal. Apr. 19, 2023). In pertinent part, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

When a claim for relief sounds in fraud, Rule 9(b) also applies. *In re Wells Fargo Forbearance Litig.*, No. 20-cv-06009-JD, 2023 WL 3237501, at *1 (N.D. Cal. May 2, 2023) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). Rule 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The touchstone of Rule 9(b) is notice." *Williams*, 2023 WL 3590682, at *1. "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989). A "pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018) (internal quotations and citation omitted).

2

**DISCUSSION**

**I.    SECTION 230 IMMUNITY**

Facebook says the entire complaint must be dismissed because it has immunity from the Newtons' civil claims under Section 230 of the Communications Decency Act (CDA). Dkt. No. 17 at 18 (citing 47 U.S.C. § 230(c)(1)). The essence of the argument is that the Newtons' claims turn on decisions by Facebook in its capacity as publisher, and so it is immune from suit.

The point is well taken for the contract and IIED claims. For purposes of the CDA, the parties agree that Facebook is an interactive computer service provider and that the allegations in the complaint concern content created by plaintiffs, not Facebook. *See* Dkt. No. 26 at 11. The dispute is about whether the contract and IIED claims "'inherently require[] the court to treat' the 'interactive computer service' as a publisher or speaker of information provided by another." *Airbnb, Inc. v. City & Cnty. of San Francisco*, 217 F. Supp. 3d 1066, 1074 (N.D. Cal. 2016) (quoting *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009)). "[P]ublication involves … deciding whether to publish or to withdraw from publication third-party" -- i.e. user-generated -- "content." *Barnes*, 570 F.3d at 1102. "[A]ny activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune under section 230." *Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1170–71 (9th Cir. 2008). "[R]emoving content is something publishers do." *Barnes*, 570 F.3d at 1103.

These straightforward principles mandate dismissal of the contract and IIED claims. These claims are based entirely on the allegation that Facebook declined to post plaintiffs' content. Dkt. No. 1 ¶¶ 85, 96. That is a quintessential publishing decision for which Facebook is "perforce immune." *Roommates*, 521 F.3d at 1171. Although Section 230(c)(1) immunity typically arises in cases alleging defamation, *see Barnes*, 570 F.3d 1101, it is by no means limited to that domain. Our circuit has held as much in unpublished decisions. *See*, *e.g.*, *Sikhs for Just., Inc. v. Meta, Inc.*, 697 F. App'x 526 (9th Cir. 2017) (affirming Section 230 immunity for discrimination claim under Title II of the Civil Rights Act); *King v. Meta, Inc.*, ___ Fed. App'x ___, 2023 WL 5318464 at *2 (contract claims not categorically exempted from Section 230(c)(1) immunity).

*Barnes* does not save the contract claim, as the Newtons suggest. *See* Dkt. No. 26 at 11.

*Barnes* states that a platform may be on the hook if it makes a specific promise to the user "with the constructive intent that it be enforceable," because such a promise operates like a "waiver" of CDA immunity. *Barnes*, 570 F.3d at 1108.  The promise in *Barnes* was by a Yahoo executive who told the plaintiff that Yahoo "would take care of" unauthorized profiles. *Id*. at 1098.  No such promise, or anything like it, is alleged here.  The Newtons make only the general allegation that Facebook did not "live up to its written Community Standards." Dkt. No. 1 ¶ 5.  That will not do. *See King*, 2023 WL 5318464, at *2 ("The specific promise to take down explicit content at issue in *Barnes* does not compare to the general promise made by Facebook, and incorporated into its TOS, to use 'good faith' or make an 'honest' determination before deciding to exercise publishing or editorial discretion.").

Consequently, the contract and IIED claims are dismissed under Section 230(c)(1).  Facebook raised other challenges to the claims apart from the CDA, which the Court need not take up at this time.  Although amendment of the complaint seems unlikely to change the Section 230(c)(1) result, the Court cannot say with certainty that amendment would be futile.  The Newtons will be permitted to try again.

## II.   FRAUD

The "fraud and detrimental reliance" claim is dismissed under Rule 8 and Rule 9(b).  The question of whether Section 230 might apply to bar the fraud claim is deferred until a plausible claim is alleged in the first instance.

For the fraud claim, the Newtons allege in effect that Facebook misrepresented its Community Standards with respect to hate speech and induced plaintiffs' reliance on those false Community Standards to their detriment. Dkt. No. 1 ¶¶ 36–38, 90, 92.  What this means is not entirely clear, mainly because the complaint lacks specific facts that might plausibly allege the essential elements of a fraud claim.

The "elements of fraud under California law are (1) a misrepresentation (i.e., a false representation, concealment, or nondisclosure), (2) scienter or knowledge of its falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damage." *Deno v. State Farm Gen. Ins. Co.*, No. 22-CV-00513-JD, 2022 WL 4112358, at *3 (N.D. Cal. Sept. 9, 2022) (citing *Lazar v.*

4

*Super. Ct.*, 12 Cal. 4th 631, 638 (1996)).

Here, the allegations of falsity are "conclusory" and lack any "particularized supporting detail." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016). Plaintiffs say "[t]he statements made by Facebook in its Community Standards and in promoting its revamped Community Standards are false and misleading[.]" Dkt. No. 1 ¶ 92. That is a legal conclusion, not a factual allegation, and the rest of the complaint does not supply facts that might make the conclusion a plausible claim.

The complaint also falls short on scienter. Although Rule 9(b) allows a party to plead scienter generally, "[i]t does not give him license to evade the less rigid -- though still operative -- strictures of Rule 8." *Iqbal*, 556 U.S. at 686-87. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). The Newtons "must state 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence'" that Facebook knew the statements in the Community Standards and press release were false when made. *Id*. (quoting *Twombly*, 550 U.S. at 556). These facts are entirely missing from the complaint. Plaintiffs' purely conclusory assertion that the "statements … were known to be false and misleading at the time they were made," Dkt. No. 1 ¶ 92, is not enough. The Newtons suggest in the opposition brief that Facebook "was aware that its new standards were unattainable and impossible to implement," Dkt. No. 26 at 15, but that allegation is not in the complaint, and in any event is just as speculative and conclusory as the prior assertion.

So too for the elements of intent, justifiable reliance, and damages. The Newtons do not allege, even generally, that Facebook misstated its hate-speech policy with the intent to defraud them. *See Williams*, 2023 WL 3590682, at *3. For justifiable reliance, the complaint says only "[t]he producers and media buyers for Beautiful Blue Eyes relied on the Community Standards in establishing the advertisement campaign for the film." Dkt. No. 1 ¶ 91.[2] Facebook is left to guess who these producers might be, which statements they saw and relied on, why that reliance was justifiable, and what actions they took (or refrained from taking) in reliance on those statements.

---

[2] The complaint does not allege that anyone relied on the October 2020 press release.

5

Consequently, the fraud claim is dismissed with leave to amend. If the Newtons choose to amend, they may wish to account for Facebook's Advertising Policies, which state that it "reserve[s] the right to reject, approve or remove any ad for any reason, in our sole discretion." Dkt. No. 17 at 72.[3]

## CONCLUSION

An amended complaint consistent with this order may be filed by September 29, 2023. A failure to meet this deadline will result in a dismissal of the case under Rule 41(b).

**IT IS SO ORDERED.**

Dated: September 6, 2023

JAMES DONATO
United States District Judge

---

[3] The Advertising Policies, like the Community Standards, are incorporated by reference into Facebook's Terms of Service, which the Newtons in turn incorporated into the complaint, and so the Court may consider them at this stage. *See Soman v. Alameda Health Sys.*, No. 17-CV-06076-JD, 2018 WL 6308185, at *2 (N.D. Cal. Dec. 3, 2018).